UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CIVIL ACTION NO. 08-23-JBC**

**ROBERT BREWER,** **PLAINTIFF,**

**V.** **MEMORANDUM OPINION AND ORDER**

**ED ROGERS, ET AL.,** **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon the defendants' motion for summary judgment based upon qualified immunity (R. 9) and defendants' motion for settlement (R. 23). The court, having reviewed the record and being otherwise sufficiently advised, will deny the defendants' motions.

**I.     Background**

A.     Factual Background

On September 21, 2007, the plaintiff went to a farm located near his home. He sat down under a tree near the side of the road, then later entered the field through a gate and sat down under a tree farther from the road. According to the plaintiff, at some time in his past, he had worked on the farm and had the owner's permission to enter the property. The plaintiff attracted the attention of a neighbor, Charles Henney. Mr. Henney spoke with the plaintiff while he was seated near the side of the road and determined that the plaintiff was intoxicated. Mr. Henney called the Bourbon County dispatcher at some point after dark. The transcript of

the call reveals that Mr. Henney was mainly concerned that the plaintiff was intoxicated and, as no one had come to pick him up, seemed likely to remain on the property and outside overnight.

Edward Rodgers[1], a Bourbon County Deputy Sheriff, was dispatched to the scene. The dispatcher relayed the information provided by Mr. Henney and told Rodgers that the plaintiff was intoxicated and had only one leg. Mr. Henney had made no report that the plaintiff had a weapon or was otherwise dangerous, and the dispatcher did not indicate otherwise to Rodgers. Rodgers arrived at the farm and removed a chain holding shut the gate. He then proceeded to drive his car across the field, to a tree under which the plaintiff was seated. The parties dispute exactly what transpired after Rodgers approached Brewer. According to the plaintiff, Rodgers did not turn on his emergency vehicle lights or announce that he was a law enforcement officer. The plaintiff maintains that he did not pretend to have a gun. According to Rodgers, he announced that he was a law enforcement officer, and the plaintiff seemed to be holding a rifle and yelled that he "had guns" and threatened to kill Rodgers. Rodgers said over dispatch, "Central, I believe he said that he has a rifle." R.9, exhibit 4, Transcription of dispatch communications, p. 12.

Guy Turner was the second Bourbon County Deputy Sheriff to arrive on the scene. Rodgers had already shot the plaintiff by the time Turner arrived. Upon

---

[1] Rodgers's name was misspelled in the plaintiff's Complaint.

2

Turner's asking Rodgers about the rifle, Rodgers responded, "I believe it might have been a tree branch." R. 11 p.9 (quoting Turner deposition, pg. 35). Brewer had no weapon, and he suffered severe injuries from the shots fired by Rodgers.

B.     Procedural History

The plaintiff, Robert Brewer, brought this action pursuant to 42 U.S.C. §1983, alleging violations of the Fourth and Fourteenth Amendments to the U.S. Constitution. He claims that Rodgers and Turner violated his Fourth Amendment rights by making an unreasonable seizure. Compl. Count 1, ¶ 23. He claims that Rodgers and Turner violated his Fourteenth Amendment rights due to "deliberate indifference to [his] medical needs and civil rights." Compl. Count 2, ¶ 27. He also alleges that their actions constituted "deliberate indifference to the constitutional rights of the Plaintiff." Compl. Count 6, ¶ 43. The plaintiff has also filed claims alleging a variety of state law violations. *See* Compl. Counts 3, 4, 5, ¶¶ 31, 35, 38. The plaintiff further alleges that under KRS 70.040, defendant Mark Matthews, as Bourbon County Sheriff, is liable for the acts and omissions of his deputies.

The defendants moved for summary judgment and subsequently moved to enforce a settlement agreement. The court will first consider the defendants' motion to enforce settlement.

II.    Motion to Enforce Settlement

The defendants request that this court enforce the terms of a settlement agreement that they maintain the parties reached.  According to the defendants, the parties agreed that defendant Rodgers would not oppose the dismissal of the criminal complaint he filed in Bourbon County state court in exchange for the dismissal of the present action.

Settlement agreements are contracts and must be reviewed according to the basic principles of contract law.  *See, e.g.*, *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992) (finding that a settlement agreement is a contract) (citations omitted).  In determining the validity of a contract, the court is guided by well-established principles of contract formation.  "[Q]uestions regarding the enforceability or validity of such agreements are determined by federal law–at least where the substantive rights and liabilities of the parties derive from federal law."  *Casey v. Illinois Cent. Gulf. R. Co.*, 687 F.Supp. 1112, 1114 (W.D. Ky 1988).  "[B]efore enforcing settlement, the district court must conclude that agreement has been reached on all material terms."  *Id.* at 1113 (citations omitted); *see also Restatement (Second) of Contracts* §59 (1981) ("[B]efore a binding contract is formed, the parties must mutually consent to all material terms.").  There must be an offer and an acceptance of that offer, including all of its material terms.

Here, no agreement was reached on the material terms of the alleged agreement.   Where an alleged acceptance proposes different terms, it is a

4

counteroffer, not an acceptance. *See Aaron E. Levine & Co., Inc. v. Calkraft Paper Co.*, 429 F.Supp. 1039 (D.C. Mich. 1976) (noting that at common law, "an acceptance or confirmation which contained terms additional or different from those of the offer constituted a rejection of the offer and thus became a counter offer); S. Williston, *The Law of Contracts* §73 (3d ed. 1957)("An acceptance of an offer forms a binding contract only if it corresponds to the offer in every respect."). In support of its motion, the defendants attached copies of correspondence between the parties, arguing that this correspondence established the existence of a settlement agreement. *See* R. 23, exhibit A. It does not.

Defendants' counsel's letter of September 4, 2008, was an offer: "[I]f the District Court action is dismissed my clients are not opposed to a dismissal of the criminal complaint filed by Deputy Rogers [sic]."[2] On October 2, 2008, plaintiff's counsel[3] responded. Although counsel wrote that plaintiff "has consented to the settlement" terms of the September 4 letter, he then proceeded to specify that the plaintiff would dismiss the civil complaint if the defendants agreed to dismiss *two* criminal charges pending against him, both the terroristic threats charge pending in Bourbon District Court and the drug possession charge pending in the Bourbon Circuit Court. This response therefore expressed different terms to the agreement

---

[2] The court sets aside, for the purposes of this analysis, whether the promise that "my clients are not opposed to a dismissal of the criminal complaint filed by Deputy Rodgers" actually conveys any valid consideration.

[3] This attorney no longer represents the plaintiff and was replaced by present counsel, who made all filings currently under consideration by this court.

5

– the dismissal of two criminal complaints rather than one – and therefore was not an acceptance to the September 4 offer but rather was a counteroffer.

It is not apparent from the correspondence that the defendants accepted this counteroffer. Rather, defendants' counsel responded, in a letter also dated October 2, 2008, that the defendants were not agreeing to dismissal of the drug possession charges. The letter makes it clear that neither defendants nor defendants' counsel intended to take any action to further dismissal of the drug possession charge. Counsel for defendants explained that "I have no control over the indictment against Mr. Brewer returned by the Bourbon County Grand Jury."[4] The defendants included no further correspondence showing that this re-statement of their initial offer was ever accepted by the plaintiff.

Given the court's resolution of this issue, the court finds it unnecessary to reach the plaintiff's other arguments for denial of the motion.

**III.    Motion for Summary Judgment**

A.    Legal Standard

The defendants move for summary judgment on the basis of qualified immunity. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party can satisfy its

---

[4] The Bourbon County Grand Jury had returned the indictment as to the drug charge.

burden by demonstrating an absence of evidence to support the non-movant's case. *Id*. at 324-25. To survive summary judgment, the non-movant must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). The non-movant must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. P. 56(e). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

B. Analysis

The defendants argue that they are entitled to a summary judgment dismissing all claims against them because defendant Rodgers is entitled to qualified immunity as to his shooting of the plaintiff.

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a court rules upon the qualified-immunity issue, it must first determine whether the facts alleged show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S.

194, 201 (2001).[5]  If the court finds that a constitutional violation could properly be made out from the parties' submissions, the next step is to ask whether the right was clearly established at the time the officer acted. *Id.*[6]

Upon a motion for summary judgment, once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the*

---

[5] It is no longer mandatory that the district court conduct the two-step test of *Saucier* in the order described here. *See Pearson v. Callahan*, — S.Ct. ----, 2009 WL 128768, at *9-11 (U.S. Jan. 21, 2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."). The district court now has the discretion to move directly to the second prong of the test if the second step would resolve the issue. *See id.* Here, the court, in its discretion, finds it appropriate to use the *Saucier* test.

[6] The Sixth Circuit has articulated both a two-step and a three-step analysis of qualified immunity claims. *See Causey v. City of Bay City*, 442 F.3d 524, 528 n.2 (6th Cir. 2006) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 301 (6th Cir. 2005) (noting only two steps necessary to capture the holding of *Saucier*); *Sample v. Bailey*, 409 F.3d 689, 695-96 (6th Cir. 2005) (explaining that the third step is "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights" (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2006)). "[B]oth the two-step approach and the three-step approach can be said to capture the holding of *Saucier v. Katz*, 553 U.S. 194 (2001). [. . . .] [I]n many factual contexts, . . . the fact that a right is 'clearly established' sufficiently implies that its violation is objectively unreasonable.'" *Causey*, 442 F.3d at 528 n.2. This court finds that using a two-step inquiry is appropriate to resolve the instant motion. *See generally* 1A MARTIN A. SCHWARTZ, SECTION 1983 LITIGATION: CLAIMS AND DEFENSES §9A.04[C], at 9A-53 (4th ed. 2006 & Supp. 2007) ("Although the [Supreme] Court has consistently defined qualified immunity in terms of the objective reasonableness of the officer's conduct, it has defined objective reasonableness in terms of whether, under the particular circumstances, the official's conduct violated clearly established federal law. In other words, an officer who violated clearly established federal law did not act in an objectively reasonable manner.").

*extent supportable by the record* . . . the reasonableness of [the defendant's] actions . . . is a pure question of law." *Dunn v. Matatall*, 549 F.3d 348, 354 (6th Cir. 2008) (quoting *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769,1776 n.8 (2007)).

<u>       A.    Whether there was a constitutional violation</u>

The plaintiff's excessive-force claim is properly analyzed under the Fourth Amendment.[7] "*[A]ll* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Slusher v. Carson*, 540 F.3d 449, 454 (6th Cir. 2008)(quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also Tabin v. Miller*, 2008 WL 5244156, *2 (E.D. Mich. 2008)). This court must determine "whether [the plaintiff] has alleged facts that are sufficient to demonstrate a 'seizure' within the meaning of the Fourth Amendment and, if so, whether any such seizure could be considered unreasonable by a jury." *Slusher*, 540 F.3d at 454.

A seizure takes place when a government actor, either by physical force or other show of authority, restrains the liberty of a citizen. *See Graham*, 490 U.S. at

---

[7]The defendants address only one action, Rodgers's shooting of the plaintiff. The plaintiff argues that he suffered both a Fourth Amendment violation and a Fourteenth Amendment substantive due process violation due to the defendants' actions, including Rodgers's action of shooting him.

395; *Slusher*, 540 F.3d at 454. Here, there was a Fourth Amendment seizure. It is undisputed that Rodgers shot the plaintiff. An officer's shooting an individual certainly restrains the liberty of that person. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment.").

Next, the court must consider whether the seizure was unreasonable, within the meaning of the Fourth Amendment. Whether a seizure by way of shooting an individual is unreasonable is determined using a specific standard. "Specifically with regard to deadly force, . . . it is unreasonable for an officer to 'seize an unarmed, nondangerous suspect by shooting him dead." *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (quoting *Tennessee v. Garner*, 471 U.S.1, 11 (1985)).[8] The use of deadly force may be reasonable, however, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id.*

To determine whether the use of force was reasonable, "[c]ourts must apply an objective standard, looking to 'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an

---

[8]"Deadly force" includes shooting a person with a firearm even where person so shot does not die. *See Robinette v. Barnes*, 854 F.2d 909, 912 (6th Cir. 1988) (noting that "deadly force" was not defined in *Tennessee v. Garner* but noting that the Model Penal Code drafted by the American Law Institute offered a helpful definition of deadly force as "force which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily harm" (citing Model Penal Code §3.11(2))). Neither party suggests that Rodgers did not use deadly force when he shot the plaintiff.

immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight.'" *Tabin*, at *3 (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir.1992) (quoting *Graham*, 490 U.S. at 396)). "This is a non-exhaustive list, and the " 'proper application' of the reasonableness inquiry 'requires careful attention to the facts and circumstances of each particular case....' " *Id.* (quoting *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir.2005) (citations omitted)). "The standard 'contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case.'" *Id.* (quoting *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002)).

     Here, taking the facts alleged by the plaintiff as true, Rodgers's use of deadly force was not reasonable. According to the plaintiff, he was seated beneath a tree, alone, in the middle of a field when Rodgers's car approached him. He had taken off his prosthetic leg, which was propped up against the tree. He claims he merely raised his hands in surrender. He claims that he did not dart about the tree or pretend to have a gun.

     A factual dispute exists as to whether the plaintiff pretended to have a gun and shouted at the deputy that he intended to shoot him. According to the defendants, the plaintiff came out from behind the tree again holding what appeared to be a rifle on his shoulder. R. 9, p.5. According to Rodgers, the plaintiff yelled, "I have guns and I'll kill all you [expletive]. Leave me alone. I'll kill

11

all you [expletive]. I have guns." R. 9, p.5 (quoting Rodgers's deposition, p.63). The defendants further argue that the plaintiff told an attending nurse, once he had been transported to the hospital, that he had pretended to have a gun. The plaintiff maintains, however, that he never told the nurse that he pretended to have a gun, citing in support a police detective's interview with him, in which he denied both having pretended to have a weapon and also having told the nurse that he had so pretended. This factual dispute goes directly to the reasonableness of the officer's perceptions.

The defendants nevertheless maintain that the court should disregard the plaintiff's version of events, as it is self-serving and contradicted by the testimony of both Rodgers and the nurse. In support, defendants cite *Jeffreys v. P.O. Rossi*, 275 F.Supp.2d 463 (S.D.N.Y. 2003) and *Radobenko v. Automated Equip Corp.*, 520 F.2d 540 (9th Cir. 1975), both cases from outside this circuit. *See* R.9, p. 11-12. However, these cases contemplate situations in which a party has created an issue of fact by an affidavit or testimony that presents evidence "so contradictory and fanciful that it cannot be believed by a reasonable person," *Jeffreys*, 275 F.Supp. 2d at 476, or that contradicts the party's own prior statements, *Radobenko*, 520 F.2d at 543-44. Here, the plaintiff's deposition supports his present argument. Furthermore, his present account is not contradicted by prior versions presented by himself, but rather by what another person maintains he told her. His own account to the police detective, taken while he was still in the

hospital and before the deposition, supports the existence of a factual dispute.

Most importantly, undisputed facts support the plaintiff's argument that Rodgers's use of force was unreasonable in light of the circumstances. Rodgers had information that the plaintiff was alone in the middle of the field, intoxicated, and had full use of only one leg. There were no reports that he had a weapon or that he had committed or was expected to commit any crime more serious than the minor offenses of trespassing or public intoxication. Rodgers chose not to use lights to further illuminate the scene before shooting, nor did he wait for the back-up that dispatch had alerted him was on the way.[9] While Rodgers's reports indicate that he saw a light made by a fired gun, the plaintiff actually had no gun, and Rodgers does not report having heard a shot.

The plaintiff's testimony is perhaps, as the defendants describe it, "self-serving." However, Rodgers's testimony could be similarly described. Only two people were present at the time of the shooting – Rodgers and the plaintiff. Their factual accounts differ. It is up to a jury, not this court, to consider all of the circumstances and determine whom to believe.

B.    Whether the right was clearly established

Despite the plaintiff's having established facts showing a constitutional violation, the defendants would nevertheless be entitled to qualified immunity if the

---

[9]The court does not consider relevant to its present inquiry other facts presented by the plaintiff, such as Rodgers's filing of charges against plaintiff and his suspension from the sheriff's office.

plaintiff cannot demonstrate that the force used was clearly established as unconstitutional in a "particularized" sense. *Slusher,* 540 F.3d at 456 (citing *Saucier*, 533 U.S. at 202). "In such a case, qualified immunity would properly be applied 'to protect officers from the sometimes hazy border between excessive and acceptable force.'" *Id.* (quoting *Saucier*, 533 U.S. at 206). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (2004).

"The right to be free from excessive force is a clearly established right." *Landis v. Baker*, 2008 WL 4613547, at *8 (6th Cir. 2008) (quoting *Walton v. Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993)). The defendants do not argue otherwise, only that the plaintiff's actions – by threatening Rodgers and pretending to have a gun – made Rodgers's actions reasonable. However, as established above, these facts are in dispute. Summary judgment is not appropriate where "there is a factual dispute . . . involving an issue on which the question of immunity turns." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir.1992) (quoting *Poe v. Haydon*, 853 F.2d. 418, 426 (6th Cir. 1988)).

The defendants' motion addresses only the plaintiff's excessive-force claim

14

against the plaintiff. They make no argument regarding the plaintiff's claims that the defendants failed to properly treat the plaintiff's medical needs,[10] nor do they present any argument related to the plaintiff's state law claims. The defendants argue only that "[i]f excessive force was not utilized, then all of Brewer's remaining claims must also fail. If Deputy Rodgers, the shooting party, is not liable, then Sheriff Matthews cannot be liable under a theory of failure to train. If Deputy Rodgers is not liable under federal law he is not liable under state law" R. 9, p.15. As the court has determined that Rodgers is not entitled to qualified immunity as to his alleged use of excessive force, the court need not address the validity of this argument and there are no further arguments raised by the defendants for the court to consider.

## V.   Conclusion

Accordingly, **IT IS ORDERED** that the defendants' motion to enforce the settlement agreement (R.23) is **DENIED**.

---

[10]The defendants do include in the conclusion of their motion the following brief statement:
> Brewer has alleged that Deputy Turner was deliberately indifferent to his reasonable medical needs by failing to obtain an ambulance within a reasonable period of time, however there is no evidence in the record to contradict Turner's statement that an ambulance arrived on the scene three to four minutes after he did. There is simply no evidence that either Rodgers or Turner failed to obtain medical care for Brewer in a quick and efficient manner.

R. 9, p. 16. The court does not consider this brief reference to the plaintiff's claims as to the defendants' failure to provide medical care as an argument for a summary judgment as to those claims.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (R.9) is **DENIED**.

The court will address the remaining motions at the telephonic status conference on February 17, 2009.

Signed on  February 5, 2009

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

16